IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

BRUCE NELSON LARGE, III,

    Petitioner,               No. CIV-S-05-1093 JAM KJM P

   vs.

A. SCRIBNER,

    Respondent.            FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a California prisoner proceeding pro se with an application for a writ of habeas corpus under 28 U.S.C. § 2254. In 2002, petitioner was convicted in Solano County of aggravated assault by a prisoner. Later, petitioner was sentenced to ten years' imprisonment in the California Department of Corrections and Rehabilitation (CDCR). Petitioner challenges his conviction and sentence. Respondent has filed an answer, and petitioner a traverse.

I. Standard of Review

       An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any

/////

/////

1

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA).  See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1]  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

/////

/////

/////

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where, as in this case, the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

/////

/////

1    It is appropriate to look to lower federal court decisions to determine what law has

2 been "clearly established" by the Supreme Court and the reasonableness of a particular

3 application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

II.  Factual Background

On direct appeal, the California Court of Appeal accurately summarized the facts presented at petitioner's trial as follows:

> On the morning of August 14, 2000, approximately 33 inmates were in the exercise yard of the California State Prison, Solano, in Vacaville.  Correctional Officer Antonio Guerrero was stationed overlooking the yard on a platform or catwalk.  Officer Guerrero was armed with an L-8 baton launcher and a mini 14 rifle.  The baton launcher is a shoulder-held weapon that looks like a rifle but fires nonlethal wooden projectiles about an inch in diameter and a half to two inches long.  Each baton cartridge or round contains five projectiles.  Officer Guerrero was trained to fire the batons at the ground and "skip" them off the ground about six feet in front of the intended target, to avoid the risk of serious injury from a direct hit.
>
> The inmates gathered in the yard into a group of about 26 Hispanics and a separate group of 7 African-Americans.  Suddenly, without provocation, the Hispanic group rushed toward the African-American inmates and started attacking them.  The attacking inmates ignored Officer Guerrero's warning to "get down" and stop the attack.  The officer fired three wooden baton rounds in the direction of the melee, aiming to hit in front of the attackers.  The Hispanic inmates broke off the attack, but then many resumed the fight.  The officer warned the inmates again and fired three more baton rounds.  The attack subsided again and the African-American inmates started to disperse into smaller clusters.
>
> The Hispanic inmates mounted a third wave of attack.  Officer Guerrero fired two more baton rounds to protect two African-American inmates below him in the yard, but stopped firing for fear of hitting the inmates who were too near the officer's position to allow safe skipping shots.  Officer Guerrero then looked across the yard and saw an African-American inmate, Shawn Robertson, lying on the ground and propped against the fence.  Robertson lay defenseless and seemingly unconscious as seven inmates kicked him.  Robertson's face was bloody.  Officer Guerrero skipped two baton rounds off the ground near the attack on Robertson.  Four of the seven attackers stopped kicking Robertson, but three did not.  Officer Guerrero identified appellants as the three inmates who continued the attack by kicking Robertson's "upper body, his chest and facial area."  Each of the appellants kicked Robertson a "few"

times.  The officer put down the baton launcher and loudly racked a live round into the mini 14 rifle.  Appellants Salazar and Large stopped kicking Robertson and lay on the ground but appellant Mancha kicked Robertson in the head at least two more times.  Mancha stopped the attack only after Officer Guerrero aimed the rifle at him and readied to shoot.

From Officer Guerrero's vantage point, he could see all appellants kicking at Robertson's head but only saw Mancha's last kicks make contact with Robertson's face, when Mancha was the lone assailant.  Correctional officer Ty Militano similarly testified that he saw all appellants kicking Robertson in the face, but saw only Mancha's last kick make contact.  There was too much activity during the group attack by all three men for direct contact to be seen until Mancha acted alone, when his kick was seen to make Robertson's head snap back.

Robertson testified that he was punched and knocked unconscious during the melee, and drifted in and out of consciousness during the remainder of the fight.  Robertson felt kicks and punches but could not identify his attackers.  An opthalmologist testified that Robertson's eye was ruptured by the application of blunt force.  The physician said a punch would not cause Robertson's injury because socket bones would absorb most of the impact from the large surface area of a fist, but that a "kick would definitely do it."  The physician opined that a wooden baton did not cause Robertson's injury because the projectile would have had to enter the eye socket directly, at just the right angle, and at a velocity close to the initial muzzle velocity.

Answer, Ex 4 at 2-3.

III. <u>Analysis of Claims</u>

    A. <u>Fourteenth Amendment Due Process</u>

        Petitioner's first claim is that he was denied a fair trial in violation of the Fourteenth Amendment when the trial court allowed in evidence that petitioner had previously been convicted of assaulting a prisoner.  <u>See</u> Am. Pet. at 4, 7-8.[2]  The court will recommend that this claim be rejected as no such evidence was ever admitted at petitioner's trial.  Petitioner's claim concerns the testimony of David Chavez.  At trial, the prosecution asked Mr. Chavez if he

---

[2] Page references are to those assigned by the CM/ECF system.

and petitioner had been convicted in Solano County for assault on another inmate. RT 328-329.[3] But Chavez never answered the question, as petitioner himself concedes. Moreover, petitioner's jury was specifically instructed before deliberations that questions are not evidence, RT 530:1-6, and the court assumes the jurors followed the instructions given them by the court. See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997).

Chavez did testify that he and petitioner were charged as co-defendants in a Solano County case involving assault. RT 328. To the extent the admission of this information might have denied petitioner his due process rights, the court notes that admission of evidence violates the Due Process Clause of the Fourteenth Amendment only if it so fatally infects the proceedings as to render them fundamentally unfair. Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir. 1991). The evidence on the prior charge petitioner faced could have prejudiced petitioner by making jurors think he was more likely to have actually committed assault in the case challenged in the instant petition. However, petitioner does not assert, and makes no attempt to demonstrate, that without Chavez's testimony jurors would not have found that petitioner committed assault. Am. Pet. at 7-8. For these reasons, petitioner's first claim must be rejected.

B. Instructional Error

Petitioner also argues he was denied a fair trial because a jury instruction permitted jurors to find petitioner guilty of a sentence enhancement simply because he had been accused of committing the acts required for the enhancement. Am. Pet. at 4, 9. The jury instruction in question, derived from California Criminal Jury Instruction 17.20 (CALJIC 17.20), reads as follows:

> It is alleged in Count 1 that in the commission or attempted commission of the crime therein described that defendants, Tommy G. Salazar, Malachi Mancha, and Bruce Nelson Large, personally inflicted great bodily injury on Shawn Robertson.

---

[3] The Reporter's Transcript is included in the record as Exhibit 6 to the Answer.

> If you find any of the defendants guilty of the charged crime of assault by a state prisoner, you must determine whether that defendant personally inflicted great bodily injury on Shawn Robertson.
>
> "Great bodily injury" as used in this instruction means a significant and substantial physical injury.  Minor, trivial, or moderate injury do not constitute great bodily injury. [*Sic*.]
>
> When a person participates in a group beating, and it is not possible to determine which assailant inflicted a particular injury, he may be found to have personally inflicted great bodily injury upon the victim if, number one, the application of unlawful physical force upon the victim was of such a nature that by itself it could have caused the great bodily injury suffered by the victim, or number two, that at the time defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim, and the defendant then knew or reasonably should have known that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim.
>
> However, if you find from the evidence that the injury was caused by a force other than that applied by any of the defendants, then the defendants could not be found to have personally inflicted the great bodily injury.
>
> The People have the burden of proving the truth of this allegation, if you have a reasonable doubt that this is true, you must find it to be not true.
>
> Include a special finding on that question in your verdict, using a form that will be supplied for that purpose.

RT 542:20-544:1.

Reviewing this instruction on its face, and in context with the rest of the record, nothing suggests jurors were informed petitioner could be convicted of anything simply by being accused.  Petitioner's second claim must be rejected.

  C. <u>Insufficient Evidence</u>

In his third claim, petitioner asserts the jury could not find the great bodily injury enhancement to be true because there was no evidence indicating petitioner applied any force to the victim.  Am. Pet. at 5, 10-12.  Petitioner's characterization of the record is not a fair one.  As

7

the appellate court indicated, there was evidence that petitioner kicked in the direction of the victim while in close proximity to him.  See Answer, Ex. 4 at 2-3; cf. RT 62-66, 103-104, 145-146, 171-173 (Guerrero); RT 208-209, 217, 237-238, 246-247 (Militano).   Presented with that evidence, jurors were free to assume petitioner's kicks landed on the victim, especially given that the victim was lying motionless on the ground at the time.  Petitioner also seems to suggest that the great bodily injury enhancement could not have been applied to him because the evidence suggests defendant Mancha landed the actual blow that resulted in the victim suffering great bodily harm.  Am. Pet. at 10-13.  However, as indicated in CALJIC 17.20 referenced above, the great bodily harm enhancement can be applicable whether or not the accused delivers the injury-causing blow.  For these reasons petitioner's third claim also must be rejected.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 5, 2008.

_____
U.S. MAGISTRATE JUDGE

1
larg1093.157